UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY | ) | CHAPTER 7 |
| SERVICES, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ROBERT TRAUNER, AS CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| CARTER BROTHERS SECURITY | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADVERSARY PROCEEDING |
| | ) | |
| | ) | CASE NO. 20-06124-JWC |
| NIGHTINGALE REALTY, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO AMEND COMPLAINT

COMES NOW Robert Trauner, as Chapter 7 Trustee for the Estate of Carter Brothers

Security Services, LLC, ("Plaintiff" or "Trustee") and pursuant to Bankruptcy Rule 7015 and

Federal Rule of Civil Procedure 15(c), requests the Court amend the Complaint to add as

defendants the entity "NG One Hartsfield Centre, LLC" ("NG One") and its currently unknown

owners[1]; The Nightingale Group, LLC; Nightingale Properties, LLC; as well as to allow

additional claims, showing the following:

### I.      Introduction

---

[1] As these individuals or entities are currently unknown to the Trustee, they will be referred to as John Does 1-10
herein.

This is an adversary action to avoid pre-petition transfers made by the Debtor Carter Brothers Security Services, LLC ("CBSS") to the entity which rented office space to a number of CBSS's principal's businesses. Plaintiffs' Complaint alleges a pattern and practice by CBSS and its principal, John Carter, whereby Carter caused CBSS to pay debts owed by other entities operated by Carter. [Doc. 1]. This is not the extent of the pattern, however. Carter used company assets to pay his own personal obligations, to pay the debts of his other companies and to support payments to himself that would otherwise not have been possible, given the fact that the Debtor was insolvent at all relevant times herein.

### A. The Defendant Entities

Trustee's investigation has yielded the following facts concerning the various Nightingale entities, which present themselves publically as one "vertically integrated" real estate firm.[2] Nightingale Properties, LLC and/or Nightingale Group, LLC, is a corporate parent[3] for multiple entities using the name Nightingale in their names.   This Nightingale parent owns, controls or manages approximately fifty entities, which appear to be single purpose entities each holding real estate in various parts of the country.   Nightingale Realty, LLC, the current defendant, purports to be an agent for these various entities.   However, all of these entities share the same website and marketing.   The Nightingale entities, including the current Defendant and alleged agent, are operated out of the same office in New York City, by the same people, sitting at the

---

[2] The website for the various Nightingale entities does not shed any real light on the relationship between these entities. The url is for "thenggroup," while the watermarks are labeled "Nightingale Properties." *See* https://thenggroup.com/; *see* Ex. 2. Entities bearing each name have been registered as New York limited liability companies. Furthermore, at various places in the website and marketing materials to investors Defendant Nightingale Realty is described interchangeably with other Nightingale entities. *See* Ex. 5; https://thenggroup.com/about/#page_genesis.

[3] This information comes from public records searches and other publicly available information.  Trustee has attempted to determine the precise roles of these entities through discovery, but Defendant has refused to provide any such information and this is the subject of a discovery dispute.  Until precise information is provided, Trustee is uncertain of the respective roles and given the substantial overlap of management, operations and control, it does not appear that there is any true distinction between these entities and they are identified herein reflecting that fact.

same desks at the same phone numbers.  These entities share corporate officers, directors and agents.  For example:

1.  Brenton Hutchinson is identified as having filled out discovery responses on behalf of Nightingale Realty, LLC in this action in his capacity as the Vice President of The Nightingale Group, LLC. The shared Nightingale website for all of the Nightingale entities also identifies him as President of Defendant Nightingale Realty, LLC.

2.  Another signatory to the discovery responses on behalf of Nightingale Realty, LLC was Andrew Martin.  He is identified as CFO of the Nightingale Group, LLC.  He is also identified as manager of NG One Hartsfield, LLC in corporate records in Georgia and Delaware.  Additionally, he is also listed as CFO on the shared Nightingale website, though the website is silent as to which entity specifically.

3.  All of the various Nightingale entities Trustee has been able to identify share the same CEO: Elie Schwartz.  A management agreement produce by Defendant has Mr. Schwartz signing for both Nightingale Realty, LLC and NG One Hartsfield Centre, LLC.

All of these entities share management, control, a website, a physical address, telephone numbers and employees. These entities present themselves to the world as a single company. However, now, when faced with this proceeding, counsel for Nightingale Realty has subsequently informed the Trustee that Nightingale Realty merely acted as an agent on behalf of an entity called NG One Hartsfield Centre, LLC ("NG One") regarding payment and processing of the lease. When pressed about the nature of the relationship between Nightingale Realty, NG One, The Nightingale Group, LLC[4], or Nightingale Properties, LLC, Defendant Nightingale

---

[4] The Nightingale Group, LLC owns approximately 99% of the shares of Nightingale Realty and appears to also manage Nightingale Realty. Although the exact ownership of NG One is currently unknown to the Trustee, public records indicate NG One was also managed by The Nightingale Group. As will be discussed in more detail, all three entities shared a common address and corporate officers.

Realty has insisted it has no knowledge of the nature, structure, or business of NG One or any of the other Nightingale entities. This, despite the fact that persons filling out discovery responses for the Defendant are publicly identified as including the manager of NG One.  Counsel for Nightingale Realty has also represented that NG One has been liquidated and is no longer in existence, though it is unclear how a supposedly arms-length agent has such intimate knowledge. These insistences have led to certain discovery disputes and delays in the progress of the above case. While it remains too soon for the Trustee to be certain to what extent Nightingale Realty was merely an agent or whether it genuinely is liable for the claims in the Complaint, the overlap between Nightingale Realty and NG One is so significant as to ensure that service of the Complaint on one put all entities within the Nightingale umbrella on notice of the Trustee's claims to the extent required by Fed. R. Civ. P. 15.

*B.  The Voidable Transfers*

This is a fraudulent conveyance action premised upon the fact that the Debtor, CBSS, paid the debts of a corporate affiliate by the name of Carter Brothers, LLC.  CBSS's records included invoices on the letterhead of "Nightingale Realty, LLC" ("Nightingale Realty" or "Defendant") for the payment of rent for office space that CBSS did not lease. Rather, the space was leased by the entity "Carter Brothers, LLC" through CBSS's principal, John Carter, roughly a decade before CBSS was formed.   The original Complaint was for $19,162.51.

Although Debtor's records indicate the payment described in the original complaint was to Defendant Nightingale Realty, LLC, Nightingale Realty claims that NG One actually received the monies transferred by CBSS.  Trustee interprets this statement as Defendant claiming it was a "pass through" entity pursuant to 11 U.S.C. § 550.  Nightingale Realty has produced a receipt

from a Wells Fargo Lockbox account of NG One's showing the deposit of Check No. 3309[5]; however, it is unclear how Nightingale Realty has copies of this deposit if it truly is separate and ignorant of the financial dealings of NG One. Because of the substantial overlap in ownership, control and management of these entities, it is likely that the corporate veil is exceedingly thin.

The Trustee has also discovered an additional $120,000 of payments to allegedly the same Nightingale entity, through Defendant's counsel Wiles & Wiles. While Defendant has produced some records concerning the original transfer identified in the Complaint, counsel for Defendant has not produced any records pertaining to these additional funds. These payments were part of the same settlement agreement transaction where CBSS was obligated to pay the debts of Carter Brothers, LLC and also pattern and practice of fraudulent behavior as those described in the Complaint. In this case, these payments were made as part of an elaborate settlement agreement between John Carter and NG One, intended to pay the debts of Carter Brothers, LLC.

NG One sued Carter Brothers, LLC, as its tenant, under the lease between NG One and Carter Brothers, LLC. However, Mr. Carter had already sold Carter Brothers, LLC to an entity known as "Tyco Integrated Security, LLC" and pocketed several million dollars, personally. When Carter Brothers, LLC was sued, Tyco threaten to declare a default under the relevant asset purchase agreement with Mr. Carter. In order to avoid this default, counsel for NG One (Wiles & Wiles—counsel herein) suggested, and Mr. Carter agreed, to substitute CBSS in as defendant in the relevant litigation, although CBSS had no lease or other contractual privity with NG One.[6] Mr. Carter accomplished this by suing his own company (CBSS) and adding CBSS as defendant in the lawsuit. Thereafter, CBSS (by Mr. Carter) agreed to obligate itself on a settlement

---

[5] This check is currently described in the Complaint.
[6] *See* Ex. 4.

agreement with NG One in place of Carter Brothers, LLC.  This scheme allowed Carter Brothers, LLC to avoid any liability under its lease, caused NG One to dismiss Carter Brothers, LLC from the lawsuit and allowed Mr. Carter to retain several million dollars from the sale of Carter Brothers, LLC.

The transfers were accomplished by CBSS making payments on Carter Brothers, LLC's lease with NG One for the remainder of the life of the lease[7]. Regular payments on the lease within the statute of limitations totaled $19,162.51, as well as an additional $120,000 paid to counsel for these defendants, Wiles & Wiles, as part of the settlement agreement.[8]  Debtor's records did not contain anything concerning the settlement agreement or the connection between Wiles & Wiles as counsel and the Nightingale entities.  Because these later checks were not in the name of one of the Nightingale entities, but rather went to the IOLTA account of counsel, the Trustee only became aware of their relationship to this matter recently by correlating discovery in this adversary proceeding to Rule 2004 discovery and document production from CBSS' former counsel.  However, all of these transfers were made pursuant to the same settlement agreement where Mr. Carter agreed to have CBSS pay the lease obligations of Carter Brothers, LLC.

   *C.  The Trustee's Motion*

Wiles & Wiles has not produced records showing where the $120,000 paid by CBSS was transferred. Because NG One is alleged to have been dissolved, the Trustee seeks to include the members of the NG One Hartsfield Centre, LLC entity as defendants in this action.  To the extent that members of NG One received distributions of assets, which would include monies

---

[7] Although CBSS made hundreds of thousands of dollars in regular lease payments after being forced as guarantor to save Carter Brothers, LLC and Mr. Carter, only the last lease payment, for $19,162.51, falls within the relevant statutes of limitation for this action.

[8] Although additional payments under this settlement were made by Mr. Carter, personally, these transfers do not seem to have originated from or consisted of property of the CBSS debtor.

paid by the Debtor, said members are liable up to the amount of those disbursements under Delaware law[9].    Although the persons filling out discovery responses for the Defendant, including the manager of NG One, certainly know who the members of NG One were, they have refused to identify these members.  Trustee seeks to add the members as "John Doe 1-10" until such time and they may be identified in this action.  Finally, Trustee seeks to add Nightingale Properties, LLC and The Nightingale Group, LLC as defendants because they managed and orchestrated these transactions and upon information and belief were ultimately beneficiaries of these transfers.  These additions satisfy the requirements of Fed. R. Civ. P. 15(c), as applied to adversary proceedings by Fed. R. Bankr. P. 7015, and serve the requirements of justice.[10]

## II.    Factual History of the Debtors and This Action

Carter Brothers Security Services, LLC, commenced a voluntary Chapter 7 proceeding on or about July 10, 2018.  Robert Trauner is the duly appointed Chapter 7 Trustee of CBSS. On or about July 7, 2020, Plaintiff filed its Complaint [Doc. 1] in this Adversary Proceeding. Plaintiff served defendant Nightingale Realty with a copy of the Complaint and a Summons, dated July 8, 2020, on July 13, 2020. [Doc. 3]. The Complaint and Summons were sent to the following:

> Nightingale Realty, LLC
> Attn: VCorp Services, LLC as Registered Agent
> 453 Hardy Ives Lane
> Lawrenceville, GA 30045
>
> Nightingale Realty, LLC
> Attn: N. Jackson Cotney, Jr.
> Wiles & Wiles, LLP
> 800 Kennesaw Avenue, Suite 400
> Marietta, GA 30060.

---

[9] *See* 6 Del. Code §18-803, 804.
[10] A copy of the proposed Amended Complaint has been attached as Ex. 1.

On or about August 7, 2020, Nightingale Realty and the Trustee jointly filed an acknowledgement of service, by which Nightingale Realty waived any claims or defenses premised up defects in service. [Doc.4]. Nightingale Realty filed its answer to the Complaint on September 11, 2020. [Doc. 5].

The parties subsequently engaged in a series of settlement attempts. These discussions were delayed in part by the COVID-19 pandemic and the illness of counsel for Defendant. Nightingale Realty's position is that it was merely a pass-through entity and agent for NG One. NG One, meanwhile, was a Delaware limited liability. Until its registrations in Georgia were withdrawn in December of 2018, its registered agent's address was:

NG One Hartsfield Centre, LLC
Attn: VCorp Services, LLC as Registered Agent
453 Hardy Ives Lane
Lawrenceville, GA 30045

According to the Georgia Secretary of State, both Nightingale Realty and NG One had the same principal office address of 1430 Broadway, Suite 1605, New York, NY 10018. This address is also shared by New York limited liability companies The Nightingale Group, LLC, and Nightingale Properties, LLC.

During the pendency of this proceeding, counsel for the Trustee was able to cross reference the names of the Nightingale entities with correspondence received through Rule 2004 discovery from CBSS' former counsel. These files consisted of a series of emails detailing settlement discussions in a lawsuit between what appears to be Nightingale Realty, NG One and John Carter, among others. As a result of these discussions, Mr. Carter sued his own company, CBSS, in order to allow CBSS to substitute CBSS for Carter Brothers, LLC and effect a release of Carter Brothers, LLC from pending litigation.  Cross-referencing the existing payment by

CBSS in the amount of $19,162.51 to Nightingale Realty, LLC and correspondence between Wiles & Wiles and CBSS' counsel obtained through Rule 2004 discovery, it was revealed that an additional $120,000.00 made payable to Wiles & Wiles, LLP[11], the Defendant's attorneys and the attorneys for NG One in the lawsuit with Mr. Carter.  The payments by Debtor were in reality for the benefit of Nightingale Realty, Nightingale Properties, The Nightingale Group, and/or NG One. Counsel for the Trustee brought this to Defendant's attention and indicated the intention to file this Rule 15 Motion to add these additional entities and the additional transfers made through Wiles & Wiles.  However, at the specific request of Defendant's counsel, Trustee refrained from amending the Complaint in an attempt to give the parties time to pursue discovery and explore the potential for settlement.

Nightingale Realty's counsel has represented that it passed the payments in question on to NG One, but that NG One had been liquidated and was no longer in existence.  The Trustee has subsequently sent Nightingale Realty discovery requesting more information about the settlement payments, the liquidation of NG One, and the corporate structure of the various entities within the Nightingale umbrella, including Nightingale Realty, NG One, and The Nightingale Group, LLC, the owner of Nightingale Realty and manager (and potential owner) of NG One. The Trustee further requested the identity of any NG One members that received distributions as part of its liquidation.

When Nightingale Realty denied having knowledge pertaining to these requests, the Trustee sent a good faith demand letter in accordance with BLR 7037-1 on October 15, 2021. In response, Defendant maintained its position and filed a unilateral motion for mediation, which was heard and denied by this Court on December 16, 2021.  While the Trustee is and always has been

---

[11] When asked about these checks in the initial stages of this proceeding, before the discovery of the settlement agreement, an attorney for Wiles & Wiles, LLP denied any relationship between those payments and this proceeding.

willing to pursue mediation as an alternative to litigation, Defendant's counsel has stated repeatedly that he does not represent any of the parties other than Nightingale Realty and only wished to mediate concerning the alleged pass through defense of his client.[12]  With Defendant's refusal to identify any of the parties receiving or otherwise benefitting from the transfers (with the exception of one it alleges is defunct and has been liquidated), there is nobody with whom the Trustee can negotiate with concerning the transfers at issue. The Trustee concluded that mediation was not a productive use of his counsel's time and the associated expense for the estate until the Trustee can identify the parties who ultimately received the Transfers.[13]

Now, in lieu of seeking to compel production of records from an allegedly defunct entity by Rule 2004 exam and subpoena, Trustee has instead determined that the most productive and efficient manner to proceed is to seek authority of this Court to add NG One, Nightingale Properties, LLC, The Nightingale Group, LLC, and the currently unnamed equity holders of NG One as defendants in this action.  Once this has taken place, it is Trustee's earnest hope that the parties in interest owning and controlling NG One, and for whose benefit the transfers were made, will then be willing to mediate or otherwise join the Trustee in his efforts towards resolution of this case.

### III.    Argument and Authority

Given Nightingale Realty's insistence that it has no knowledge of the workings of an entity it was an agent for, which was operated in the same offices by the same individuals, the Trustee is convinced the only way this proceeding can move forward is by adding all related entities and claims to the Complaint. Nightingale Realty contends that NG One is the actual recipient of the $19,162.51 identified in the original Complaint. Neither Defendant nor

---

[12] *See* Ex. 4.
[13] This question was heard by the Court in a status conference on December 16, 2021.

Defendant's counsel has identified the ultimate recipient of the additional $120,000 in settlement payments paid by CBSS to Wiles & Wiles. Trustee's research has disclosed that, upon information and belief, The Nightingale Group, LLC was the manager and potential owner of NG One and is a party for whose benefit the transfers were made. 11 U.S.C. § 550(a). Furthermore, Nightingale Properties, LLC has presented itself as the former owner of NG One on its website. The addition of these entities to the Complaint is proper under Rule 15 because the overlap between the Defendant, The Nightingale Group, LLC, Nightingale Properties, LLC and NG One (along with its owners) is so significant as to ensure that the very individuals who would have received notice of the Complaint had NG One been served initially were *actually* served with the Complaint when it went to Nightingale Realty.  Again, the same persons are employed by each of these entities, located in the same offices and all acting on behalf of the same parent Nightingale entity through their shared CEO, Elie Schwartz.

When a party seeks to amend its complaint after the defendant has answered, it may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Federal Rules of Civil Procedure provide for liberal amendment of pleadings, advising the "court should freely give leave when justice so requires." *Id.* For this reason, "[a] court cannot deny a motion to amend merely on its own discretion; a 'substantial reason' must exist for a court to deny leave to amend," such as undue delay, undue prejudice to the defendant, or futility of the amendment. *Old Republic Nat'l Title Ins. v. Presley (In re Presley)*, Nos. 11-42363-MGD, 12-4012, 2012 Bankr. LEXIS 6032, at *5-6 (Bankr. N.D. Ga. Nov. 28, 2012) (Diehl, J.) (citing *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)). "Refusing to grant leave without any substantial reason . . . has been deemed to be an abuse of discretion and inconsistent with the spirit of the Federal Rules." *Eden v. Eden (In re Eden)*, 584 B.R. 795, 810 (Bankr. N.D.

Ga. 2018) (Diehl, J.) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

The purpose of Rule 15(c) is to ensure that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984). "Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading." *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002).

The Trustee's Complaint in this proceeding, though necessarily limited by the incomplete state of the Debtor's records, provided notice to NG One that the Trustee was bringing claims on behalf of CBSS based upon payments made by CBSS against NG One's lease obligations with other entities controlled by John Carter.  The payments made through Wiles & Wiles were made based upon the same contrived settlement where Mr. Carter offered up CBSS to pay for the obligations of Carter Brothers, LLC, and thus enabled Mr. Carter to personally retain the benefit of the Carter Brothers, LLC sale.  This Complaint described Mr. Carter's a pattern and practice of fraudulent behavior by which he caused some of his entities to pay obligations owed by other entities. Most importantly, because NG One was managed by the same entity and individuals as Nightingale Realty (The Nightingale Group, LLC) at the same address in New York City, NG One and the other Nightingale entities all received the Complaint and were aware of both the avoidance action and the fact that the Trustee sought to recover all of the payments made as part of this contrived settlement. For the reasons described below, Rule 15(c) expressly allows the Trustee's Complaint to be amended to add both the newly discovered transactions and the additional parties of Nightingale Properties, LLC; The Nightingale Group, LLC; NG One and its former members.

a. *The newly discovery transfers were part of the same pattern and practice of conduct as described in the initial Complaint.*

If no substantial reason exists to deny leave to amend, Rule 15(c)(1)(B) provides that the amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

"The central consideration of Rule 15(c)(2) is whether there is a nexus between the factual allegations in the original pleading and those in the amended complaint." *Burtch v. Dent (In re Circle Y of Yoakum, Tex.)*, 354 B.R. 349, 357 (Bankr. D. Del. 2006). Relation back is allowed "where the amended complaint does not allege a new claim but renders prior allegations more definite and precise . . . . In other words, where the facts alleged in the amended complaint are the 'natural offshoot' of the scheme alleged in the original complaint, relation back is allowed." *In re Presley*, 2012 Bankr. LEXIS 6032, at *6-7 (citing *Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)). "On the other hand, amendments generally will not relate back if they interject ***entirely*** different facts, conduct, transactions or occurrences." *McAFEE v. Harman (In re Harman)*, No. 11-05534-LRC, 2021 Bankr. LEXIS 586, at *21-22 (Bankr. N.D. Ga. Mar. 12, 2021) (Ritchey Craig, J.) (citing *In re Universal Factoring Co., Inc.*, 279 B.R. 297, 303 (Bankr. N.D. Okla. 2002)) (emphasis added).

Because the phrase "conduct, transaction, or occurrence" found in Rule 15(c) is cast in the disjunctive, "the allegations in the Amended Complaint need not arise from the same transaction or occurrence attempted to be set forth in the [Initial] Complaint, so long as it springs from the same conduct." *In re Harman*, 2021 Bankr. LEXIS 586, at *21-22 (citing *In re Universal Factoring Co., Inc.*, 279 B.R. at 307 (internal citation marks omitted). "As many courts have recognized, the most important factor in determining whether a pleading relates back

is 'whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading.'" *In re Mack Indus., Ltd.*, 2021 Bankr. LEXIS 114, 2021 WL 192000, *2 (Bankr. N.D. Ill. 2021). "In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim." *Gelling v. Dean (In re Dean)*, 11 B.R. 542, 545 (9th Cir. B.A.P. 1981), aff'd, 687 F.2d 307 (9th Cir. 1982) (citing 3 Moore's Federal Practice para. 15.15[3], pps. 15-196-205 (2d Ed. 1980)).  Additionally, "[w]here there are a series of transfers, it is necessary that the Court examine 'whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent transaction.'" *In re Bennett Funding Group, Inc.*, 275 B.R. 447, 451 (Bankr. N.D.N.Y. 2001) (quoting *Austin Driveway Servs, Inc.*, 179 B.R. 390, 396 (Bankr. D. Conn. 1995)).

Plaintiff's Complaint seeks to recover fraudulent transfers made by the Debtor, where the Debtor had no legal obligation or privity of contract with the defendants. Trustee sought to recover $19,162.51 in payments where CBSS was not obligated on the debt, and has now uncovered an additional $120,000 in transfers that were made through Defendant's counsel, Wiles & Wiles.  These claims are brought pursuant to 11 U.S.C. § 548 as well as 11 U.S.C. § 544 incorporating O.C.G.A. § 18-2-70. For the purposes of this Motion, Plaintiffs incorporate by reference the arguments and allegations made pursuant to those statutes in the Complaint.

Plaintiff alleged a common pattern and practice of conduct according to which the Debtor made the transfer listed in the Complaint. This pattern and practice involved the Debtor's

principal using the Debtor to make payments for the benefit of Mr. Carter and/or non-Debtor affiliates while the Debtor was insolvent. Specifically, the transfer described in the Complaint concerned the Debtor making payment on a lease in the name of a non-Debtor affiliate owned by Mr. Carter, despite the fact that the Debtor's name was not on the lease and the Debtor had no liability toward the lease. That pattern and practice allegation put the Defendant on notice of the potential for additional transactions arising from same conduct (indeed, the same settlement agreement) to be added to the Complaint. This payment was made pursuant to a contrived settlement agreement where Mr. Carter sued his own company in order to bring CBSS into his litigation with the Defendants.  Mr. Carter obligated CBSS to make payments on the Carter Brothers, LLC debt, in order to protect his own interests and proceeds from the sale of Carter Brothers, LLC.  This entire settlement scheme was known by Defendants and by counsel for these Defendants, who participated in the negotiation of the terms by which CBSS obligated itself to make payments.

CBSS's records included a series of payments to Wiles & Wiles, LLP totaling $120,000.00. As the Debtor's records did not include explanations for these payments, only the checks themselves, the Trustee was not initially able to connect these payments to the law firm hired by NG One, and later the Defendant Nightingale Realty, to the payment on the lease described in the Complaint. By applying new information discovered in the course of this proceeding to that obtained through Rule 2004 exams of Debtor's counsel, the Trustee discovered this series of payments by CBSS to Wiles and Wiles stems from the same contrived settlement agreement. Defendants were fully aware of the fact that CBSS was being substituted in for Carter Brothers, LLC and in fact released Carter Brothers, LLC after CBSS had obligated itself on the debt.  Defendants were fully aware that CBSS had no legal obligation to pay the

debts of Carter Brothers, LLC and that the forthcoming payments were in fact being made by CBSS. Although CBSS was not initially a party to this lawsuit, was never a party to the lease in question, and owed no debt to NG One, CBSS was impleaded into the suit by Mr. Carter and added to the settlement agreement in order to protect John and Cris Carter and obtain the release of Carter Brothers, LLC.

This is exactly the same sort of transaction as those described in the pattern and practice allegations made in the Complaint. These additional transfers are thus linked not only in terms of Mr. Carter's conduct, but also by the lease itself. By describing transfers made by CBSS in connection with a specific lease, as well as the general pattern and practice of Mr. Carter, the Trustee placed the Defendant on notice that other potential transfers connected to the lease and conduct could be added. These transfers are just such instances.

> b. *Because Nightingale Realty, Nightingale Properties, LLC, The Nightingale Group, LLC, and NG One shared a common principal place of business, management, registered agent, and key individuals, service of the Complaint on Nightingale Realty necessarily provided notice to NG One of the adversary proceeding.*

When a party seeks to amend a pleading to add or change the party against whom a claim has been brought, Rule 15(c)(1)(C) is satisfied provided:

> within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 4(m), meanwhile, requires service of a complaint within 90 days of its filing. Thus, in order for NG One to be added by amendment to the Complaint, it must have (1) within 90 days of the filing of the Complaint, (2) received notice of the action and (3) known or should have known

16

the actions would have been brought against it but for a mistake of identity. Each of these elements is satisfied in this instance.

First, the Complaint was filed on July 7, 2020. The Defendant was served on July 13, 2020, six days later. This service was acknowledged by Defendant on August 7, 2020, approximately 31 days after the filing of the Complaint. As a threshold matter, service was accomplished within the requirements of Rule 4(m).

Second, NG One and/or its owners received notice of the Complaint. According to public records[14] and Defendant's interrogatory responses[15], Nightingale Realty is owned 99% by The Nightingale Group, LLC, 0.5% by the Simon Singer Family Trust, and 0.5% by the Elchonon Schwartz Family Trust. Elie Schwartz is the CEO of The Nightingale Group. The principal address of Nightingale Realty is 1430 Broadway, Suite 1605, New York, NY 10018. The principal address of The Nightingale Group is also 1430 Broadway, Suite 1605, New York, NY 10018.

NG One was managed by The Nightingale Group, according to public records. Its principal address was also 1430 Broadway, Suite 1605, New York, NY 10018. Furthermore, Nightingale Realty produced a managing agreement between it and NG One in which The Nightingale Group, LLC, signs for NG One Hartsfield Centre LLC. The signature is made by Elie Schwartz, managing member of The Nightingale Group, LLC. Elie Schwartz also signs as President of Nightingale Realty, LLC. The Nightingale Group, LLC, upon information and belief, was a party for whose benefit the transfers were made, either through ownership of Nightingale Realty, NG One or otherwise deriving income from the Debtor's payments.

---

[14] Ex. 2.
[15] Ex. 3.

This suggests The Nightingale Group, the owner and operator of Nightingale Realty, was in fact the former owner and operator of NG One. Even if it only operated, and did not own NG One, by virtue of sharing the same office space as Nightingale Realty and by the same individuals as Nightingale Realty any notice that went to Nightingale Realty also went to NG One. The exact same individuals who would have been served had Plaintiff served the Complaint against NG One initially received the Complaint on July 13, 2020, demonstrating actual notice of the Complaint on the part of the necessary parties.

Third, and finally, NG One and/or its former owners knew, or should have known, the action would have been brought against it but for a mistake of identity. The Complaint describes one payment via CBSS Check No. 3309, dated July 7, 2014, for the amount of $19,162.51, that was made as part of a larger pattern and practice of fraudulent behavior by John Carter. The Defendant's subsequent communications have demonstrated this was sufficient to put the Nightingale entities on notice that this payment supposedly went to NG One. Furthermore, the Nightingale parties were aware that this payment was based upon a lease to which CBSS was not a party. This same lease, meanwhile, provided the impetus for the suit by NG One against Mr. Carter described above which led to CBSS's being made to pay the majority of Mr. Carter's settlement agreement to NG One. NG One was thus aware of the exact transfer in question, that the transfer in fact went to it, and that the transfer was based upon a lease and contrived settlement that provided the basis for an additional $120,000.00 in payments from CBSS according to the pattern and practice described in the Complaint.

## IV.    Conclusion

The various entities going by variations on the name "Nightingale" are attempting to use their own complex corporate structure to avoid liability through legal fiction. Each operates from

the same offices while owned and managed by the same entities and individuals. When served, the same individual entities receive the Complaint through an identical mailbox. When marketing to investors, all the Nightingale entities are treated as one vertically integrated machine.

When faced with this proceeding, however, Defendant Nightingale Realty claims to be a completely separate and distinct entity with no knowledge of the inner workings of the other companies its CEO runs from the same offices. It is completely ignorant of what NG One is, was, or did, except of course that it was liquidated and is no longer in business. It refuses to answer questions pertaining to its 99% owner, The Nightingale Group, even when the corporate managers for The Nightingale Group are answers its interrogatories.

Defendant hopes to dissuade Trustee from pursuing this matter further, on behalf of NG One and the remaining Defendants Trustee now seeks to add to this Complaint, because it claims NG One is defunct.  The same individuals involved in Nightingale Realty, NG One, The Nightingale Group, and Nightingale Properties received the funds from the Debtor and then proceeded to render NG One supposedly judgment proof.  These individuals, acting as Nightingale Realty and wearing that hat, claim that they were not aware of the transactions of NG One or who the members were, because they are not being asked while wearing the correct hat.  This is exactly the situation Rule 15 was designed to address. Because each entity in the Nightingale umbrella necessarily received actual notice of the Complaint by and through the same individuals working in the same office, as well as the necessary information to be on notice of additional transfers from CBSS tied to Mr. Carter's lease, Rule 15 allows both the additional parties and transfers to be added.

WHEREFORE, Plaintiff respectfully requests this Court:

(a)    grant Plaintiff's Motion to Amend the Complaint; and

(b)    grant such other and further relief as the Court deems just and reasonable.

Dated: January 24, 2022          Respectfully submitted,

MACEY, WILENSKY & HENNINGS, LLP

By: /s/ Clayton A. Smith
Clayton A. Smith
Georgia Bar No. 196303
Todd E. Hennings
Georgia Bar No. 347302
5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234

Attorneys for Robert Trauner,
 as Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY | ) | CHAPTER 7 |
| SERVICES, LLC, | ) | |
| | ) | |
|     Debtor. | ) | |
| | ) | |
| ROBERT TRAUNER, AS CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| CARTER BROTHERS SECURITY | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADVERSARY PROCEEDING |
| | ) | |
| | ) | CASE NO. 20-06124-JWC |
| NIGHTINGALE REALTY, LLC | ) | |
| | ) | |
| Defendant. | ) | |

CERTIFICATE OF SERVICE

I, Todd E. Hennings, certify that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the 24th day of January, 2022, I caused to be served a copy of the within Plaintiffs' Motion to Amend Complaint by depositing same in the United States Mail, postage prepaid, to the following:

Nightingale Realty, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

The Nightingale Group, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

21

Nightingale Properties, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

NG One Hartsfield Centre, LLC
Attn: Andrew Martin, CFO and Manager
1430 Broadway, Suite 1605
New York, NY 10018

John Wiles
Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia  30060-7946

Executed on:   January 24, 2022.


_____/s_____

Todd E. Hennings, State Bar No. 347302