

# GEORGIA
# CORPORATIONS
# DIVISION

GEORGIA SECRETARY OF STATE

## BRAD RAFFENSPERGER

**HOME (/)**

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | **NIGHTINGALE REALTY, LLC** | Control Number: | **09009955** |
| Business Type: | **Foreign Limited Liability Company** | Business Status: | **Active/Owes Current Year AR** |
| Business Purpose: | **NONE** | | |
| Principal Office Address: | **1430 BROADWAY, SUITE 1605, New York, NY, 10018, USA** | Date of Formation / Registration Date: | **2/10/2009** |
| Jurisdiction: | **New York** | Last Annual Registration Year: | **2021** |
| Principal Record Address: | **NONE** | | |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | **corporation service company** |
| Physical Address: | **2 Sun Court Suite 400, Peachtree Corners, GA, 30092, USA** |
| County: | **Gwinnett** |

Back

Filing History        Name History

Return to Business Search



Control No: 09009955
Date Filed: 02/10/2009 03:16 PM
Karen C Handel
Secretary of State



**OFFICE OF SECRETARY OF STATE**
**CORPORATIONS DIVISION**
315 West Tower, #2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334-1530
(404) 656-2817
Registered agent, officer, entity status information via the Internet
http://www.georgiacorporations.org

**KAREN HANDEL**
Secretary of State

2009 FEB 10 AM 10: 19
SECRETARY OF STATE
CORPORATIONS DIVISION

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
**FOR FOREIGN LIMITED LIABILITY COMPANY**

---

## IMPORTANT

Remember to include your e-mail address when completing this transmittal form.

Providing your e-mail address allows us to notify you via e-mail when we receive your filing and when we take action on your filing.   Please enter your e-mail address on the line below. Thank you.

E-Mail: imuller@vcorpservices.com

---

**NOTICE TO APPLICANT:  PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM**

| | |
|---|---|
| 1. | NIGHTINGALE REALTY, LLC |

Limited Liability Company Name | Name Reservation Number (Optional)
February 9, 2009

Date Business Commenced (Or Proposed) in Georgia    (NOTE:  If the date provided here is more than 30 days prior to the date the application is received by the Secretary of State, a $500 penalty must be paid; penalty is statutory and cannot be waived by Secretary of State.)

2. Mimi Sanik                                                          845-425-0077
Name of filing person (certificate will be mailed to this person, at address below)                Telephone Number

20 Robert Pitt Drive, Suite 214              Monsey                    NY          10952
Address                                      City                      State       Zip Code

3. New York                          September 8, 2005
Jurisdiction (Home state/country)        Date of Organization in home state

4. 1430 Broadway Suite 1605          New York                    NY          10018
Address of Principal Place of Business    City                      State       Zip Code

5. Vcorp Services, LLC
Name of Registered Agent in Georgia
4450 Lower Roswell Road

Registered Office Street Address in Georgia (Post office box or mail drop not acceptable for registered office address)
Marietta            Cobb              GA        30068
City                County            State     Zip Code

6. Eichonon Schwartz, 1430 Broadway Suite 1605          New York          NY      10018
Manager's Name & Address (Person w/responsibility for maintaining records)    City          State   Zip Code

7. 1430 Broadway Suite 1605                          New York          NY      10018
Address Where Limited Liability Company Records Are Maintained    City          State   Zip Code

8. **NOTICE:  Mail or deliver an original and one copy of this form and the filing fee of $225.00 to the Secretary of State at the above address. Filing fees are NON-refundable.**

This application is signed by a person duly authorized to sign such instruments by the laws of the jurisdiction under which the foreign limited liability company is organized.  The foreign limited liability company undertakes to keep its records at the address shown in #7 above until its registration in Georgia is canceled or withdrawn.  The foreign limited liability company, in accordance with Title 14 of the Official Code of Georgia Annotated, appoints the Secretary of State as agent for service of process if no agent has been appointed in Georgia or, if appointed, the agent's authority has been revoked or the agent cannot be found or served by the exercise of reasonable diligence.

Authorized Signature                              Date  2/9/09

State of Georgia
Request certificates and obtain ent                Expedite Creation - Foreign Entity 2 Page(s)            ns.org

FORM 241

T0904110515



**GEORGIA CORPORATIONS DIVISION**

GEORGIA SECRETARY OF STATE

# BRAD RAFFENSPERGER

**HOME (/)**

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | |
|---|---|
| Business Name: | **NG ONE HARTSFIELD CENTRE LLC** |
| Business Type: | **Foreign Limited Liability Company** |
| Business Purpose: | **NONE** |
| Principal Office Address: | **1430 BROADWAY, SUITE 1605, NEW YORK, NY, 10018, USA** |
| Jurisdiction: | **Delaware** |
| Principal Record Address: | **NONE** |
| Dissolved Date: | **12/19/2018** |

| | |
|---|---|
| Control Number: | **12082621** |
| Business Status: | **Withdrawn** |
| Date of Formation / Registration Date: | **10/12/2012** |
| Last Annual Registration Year: | **2018** |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | **VCORP AGENT SERVICES, INC.** |
| Physical Address: | **453 HARDY IVES LANE, LAWRENCEVILLE, GA, 30045, USA** |
| County: | **Gwinnett** |

Back

Filing History    Name History

Return to Business Search

Date Filed 10/12/2012 11:46 AM
Brian P. Kemp
Secretary of State



**OFFICE OF SECRETARY OF STATE**
**CORPORATIONS DIVISION**
237 Coliseum Drive
Macon, Georgia 31217
(404) 656-2817
Registered agent, officer, entity status information via the Internet
sos.georgia.gov/corporations

Brian P. Kemp
Secretary of State

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
**FOR FOREIGN LIMITED LIABILITY COMPANY**

SECRETARY OF STATE
CORPORATIONS DIVISION
2012 OCT 11 AM 10: 59

---

**IMPORTANT**

**Remember to include your e-mail address when completing this transmittal form.**

Providing your e-mail address allows us to notify you via e-mail when we receive your filing and when we take action on your filing.   Please enter your e-mail address on the line below. Thank you.

E-Mail: renee@vcorpservices.com

---

**NOTICE TO APPLICANT:  PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM**

| | |
|---|---|
| 1. | NG One Hartsfield Centre LLC |

Limited Liability Company Name    Name Reservation Number (Optional)
upon filing

Date Business Commenced (Or Proposed) in Georgia    (NOTE:  If the date provided here is more than 30 days prior to the date the application is received by the Secretary of State, a $500 penalty must be paid; penalty is statutory and cannot be waived by Secretary of State.)

2. Renee Luke c/o Vcorp Services    845-517-3696
Name of filing person (certificate will be mailed to this person, at address below)    Telephone Number

25 Robert Pitt Dr.    Monsey    NY    10952
Address    City    State    Zip Code

3. Delaware    10/05/2012
Jurisdiction (Home state/country)    Date of Organization in home state

4. 1430 Broadway, Suite 1605    New York    NY    10018
Address of Principal Place of Business    City    State    Zip Code

5. Vcorp Services, LLC
Name of Registered Agent in Georgia
3675 Crestwood Parkway, Ste. 350

Registered Office Street Address in Georgia (Post office box or mail drop not acceptable for registered office address)
Atlanta    Gwinnett    GA    30096
City    County    State    Zip Code

6. The Nightingale Group LLC, 1430 Broadway, Suite 1605    New York    NY    10018
Manager's Name & Address (Person w/responsibility for maintaining records)    City    State    Zip Code

7. 1430 Broadway, Suite 1605    New York    NY    10018
Address Where Limited Liability Company Records Are Maintained    City    State    Zip Code

8. **NOTICE: Mail or deliver an original and one copy of this form and the filing fee of $225.00 to the Secretary of State at the above address. Filing fees are NON-refundable.**
This application is signed by a person duly authorized to sign such instruments by the laws of the jurisdiction under which the foreign limited liability company is organized.  The foreign limited liability company undertakes to keep its records at the address shown in #7 above until its registration in Georgia is canceled or withdrawn.  The foreign limited liability company, in accordance with Title 14 of the Official Code of Georgia Annotated, appoints the Secretary of State as agent for service of process if no agent has been appointed in Georgia or, if appointed, the agent's authority has been revoked or the agent cannot be found or served by the exercise of reasonable diligence.

_____    10/10/12
Authorized Signature    Date

Request certificates and obtain entity information

State of Georgia
Creation - Foreign Entity 3 Page(s)

T1229003214

**COVID-19 Vaccines**

Vaccine appointments are available at New York State mass vaccination sites for children ages 5- 11. Vaccines are also widely available through your child's pediatrician, family physician, local county health department, FQHC, or pharmacy.

FIND PROVIDER  >

# Department of State
## Division of Corporations

## Entity Information

Return to Results Return to Search

Entity Details

**ENTITY NAME:** THE NIGHTINGALE GROUP, LLC

**FOREIGN LEGAL NAME:**

**ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY

**SECTIONOF LAW:** 203 LLC - LIMITED LIABILITY COMPANY LAW

**DATE OF INITIAL DOS FILING:** 09/08/2005

**EFFECTIVE DATE INITIAL FILING:** 09/08/2005

**FOREIGN FORMATION DATE:**

**COUNTY:** NEW YORK

**JURISDICTION:** NEW YORK, UNITED STATES

**DOS ID:** 3253702

**FICTITIOUS NAME:**

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**ENTITY STATUS:** ACTIVE

**REASON FOR STATUS:**

**INACTIVE DATE:**

**STATEMENT STATUS:** CURRENT

**NEXT STATEMENT DUE DATE:** 09/30/2023

**NFP CATEGORY:**

ENTITY DISPLAY

Service of Process Name and Address

**Name:** THE LLC

**Address:** 1430 BROADWAY STE 1605, NEW YORK, NY, UNITED STATES, 10018

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

January 19, 2022 | 3:12 pm

**COVID-19 Vaccines**

Vaccine appointments are available at New York State mass vaccination sites for children ages 5- 11. Vaccines are also widely available through your child's pediatrician, family physician, local county health department, FQHC, or pharmacy.

FIND PROVIDER >

# Department of State
## Division of Corporations

## Entity Information

Return to Results    Return to Search

Entity Details

**ENTITY NAME:** NIGHTINGALE PROPERTIES, LLC

**FOREIGN LEGAL NAME:**

**ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY

**SECTIONOF LAW:** 203 LLC - LIMITED LIABILITY COMPANY LAW

**DATE OF INITIAL DOS FILING:** 09/08/2005

**EFFECTIVE DATE INITIAL FILING:** 09/08/2005

**FOREIGN FORMATION DATE:**

**COUNTY:** NEW YORK

**JURISDICTION:** NEW YORK, UNITED STATES

**DOS ID:** 3253626

**FICTITIOUS NAME:**

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**ENTITY STATUS:** ACTIVE

**REASON FOR STATUS:**

**INACTIVE DATE:**

**STATEMENT STATUS:** CURRENT

**NEXT STATEMENT DUE DATE:** 09/30/2023

**NFP CATEGORY:**

ENTITY DISPLAY

Service of Process Name and Address

**Name:** THE LLC

**Address:** 1430 BROADWAY / SUITE 1605, NEW YORK, NY, UNITED STATES, 10018

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

# Hartsfield Centre

NIGHTINGALE
PROPERTIES

BACK TO NORTHFIELD

PREVIOUS    NEXT

PROPERTIES    SERVICES    STRATEGY    ABOUT    TEAM    CONTACT    INVESTOR LOG IN

148,610 sf

Hartsfield Centre is an 8-story prominent Class A office building overlooking Hartsfield-Jackson Atlanta International Airport. The building location makes it an established and preferred site for aviation and related industries. It accommodates a mobile tenant base with 848 surface parking spaces, direct access to Hartsfield-Jackson, Atlanta's four major interstates (I-20, I-75, I-85, I-285) and Atlanta's public rail system. The building was LEED-Certified in 2012 and moved to Silver LEED-Certified as of 2017.

theriggroup.com/properties/?pid=42&prop_type=all&prop_location=all



# MANAGEMENT AGREEMENT

This Management Agreement (this "Agreement") is made as of this 28th day of January, 2013 by and between **NG ONE HARTSFIELD CENTRE LLC,** having an address at 1430 Broadway, Suite 1605, New York, New York 10018 (the "Owner") and **NIGHTINGALE REALTY, LLC** (the "Agent").

NOW, THEREFORE, in consideration of the mutual promises of the parties, and intending to be legally bound, it is hereby agreed as follows;

1. **ENGAGEMENT OF AGENT:**

The Owner hereby engages and appoints the Agent as the sole and exclusive management agent of the following property (the "Property"):

| Property Name | Property Address | Total GLA |
|---|---|---|
| One Hartsfield Centre | 100 Hartsfield Centre Pkwy Atlanta, GA | 150,851 Square Feet |

2. **PURPOSE OF THIS AGREEMENT:**

The Owner hereby authorizes and empowers the Agent, who desires to be engaged, to carry out the Property's management and oversee leasing functions specifically enumerated within this Agreement and none other. It is the desire of both the Owner and the Agent that they work together to attain mutually agreed upon objectives for the management and leasing of the Property.

3. **TERMS OF THIS AGREEMENT:**

   A.   This Agreement shall begin on the date hereof (the "Commencement Date"), and shall terminate on January 31, 2014, unless earlier terminated

as set forth in this Agreement. This Agreement shall be renewed automatically for succeeding periods of one (1) year each ("Renewal Periods") on the same terms and conditions as herein contained unless either party shall, at least thirty (30) days prior to the expiration of the initial term or a subsequent Renewal Period, give written notice to the other party of its intention not to renew this Agreement. This Agreement may be terminated additionally as outlined herein.

B.   For professional property management services, Owner shall compensate Agent at a fee of four percent (4%) of the Gross Rents collected each month, payable at the end of the month, by Agent deducting such fee monthly from the gross rents of the current month. "Gross Rents" is defined as any and all rents, revenues and receipts from the operation of the Property including, without limitation, rents, additional rents, common area maintenance charges, fees and any other such charges from the Property. In no event shall Agent be entitled to a management fee in excess of four percent (4%) of the Gross Rents generated by the Property.

C.   For exclusive or non-exclusive leasing services, Owner shall compensate Agent at a rate not to exceed four percent (4.0%) of the aggregate lease value payable through the term of any lease that is originated by Agent and executed by Owner during the term of this Agreement. In the event Agent utilizes a third-party representative for exclusive or non-exclusive leasing services, in lieu of compensating Agent, Owner shall compensate such representative at a rate not to exceed six percent (6%) of the aforesaid aggregate lease value. Agent shall protect all co-brokers, and share commissions where applicable. One half of any leasing commission due shall be payable to Agent upon execution of any lease by Owner by Agent and the other half shall be due upon said tenant fully occupying the space and paying full rent, deducting such commissions from the gross rents. In no event shall aggregate leasing commissions exceed six percent (6.0%) of the aggregate lease value.

D.   Neither the Agent (nor any affiliate thereof) shall be entitled to commissions with respect to: (i) leases with tenants that are occupying premises on the Property on the date of closing of the acquisition by the Owner of the Property or that have entered into leases for premises on the Property prior to such date, (ii) leases on which offers from prospective tenants have been received or as to which negotiations are on-going as of the date of acquisition by the Owner of the Property, provided Agent shall be entitled to commissions for such prospective tenants if Agent originated such leases, or (iii) renewals, relocations or expansions by any tenants coming within the provisions of subsections (i) or (ii) above. The Agent

(or any affiliate thereof) shall not be entitled to any construction or supervisory fees.

E.   None of the material terms of this Agreement in effect as of the date hereof of the Property shall be modified without the written approval of Owner.

4.   **TERMINATION:**

During the initial term of this Agreement and any Renewal Period, the Agent may be terminated as follows:

A.   By the Owner, any time after the completion of three (3) months of this Agreement, if the Owner makes a reasonable determination that the Agent is not maintaining the Property in accordance with the standards of comparable shopping centers in the marketplace or is not communicating with the Owner regarding the financial and operational status of the Property on a timely basis upon notice from Owner to Agent; provided however, Owner is to give Agent forty-five (45) days prior notice to cure any such default.

B.   By the Owner, effective immediately upon notice, in the event of dissolution of the Agent, or in the event a petition of bankruptcy is filed by or against the Agent, or in the event that Agent should make an assignment for the benefit of creditors or take advantage of any insolvency act.

C.   By the Owner, effective immediately upon notice, in the event that Agent, or its employees shall commit fraud, intentional willful misconduct or any criminal act.

D.   If Owner at any time sells the Property.

5.   **RESPONSIBILITIES OF THE AGENT:**

A.   The Agent shall perform routine inspections of the Property to insure that all terms of subcontracts and this Agreement are being adhered to. The cost of such inspections, anticipated to be approximately weekly, shall be at the expense of Agent. Agent shall perform ad-hoc inspections of the Property and shall provide owner with inspection reports and photos of the Property at the request of Owner.

B.   On the basis of budget parameters previously approved by the Owner, the Agent shall provide maintenance staff, only as needed, to perform maintenance services at the Property. Agent shall cause to be hired, discharged and paid all employees, janitors, engineers, security and other personnel (where applicable) employed at or in connection with the Property. Agent agrees to use reasonable care in the hiring of such employees. Agent shall continue throughout the term of this Agreement to be an equal opportunity employer and shall comply, or cause compliance, to the extent required, with any statutes, laws, ordinances, orders, rules, regulations and requirements of all Federal, state and local governments, courts, departments, commissions, boards, and offices having jurisdiction, or any other body exercising functions similar to those of any of the foregoing, which may be applicable to the Property or any part thereof ("Legal Requirements") with respect to such employees. Any such personnel shall be employees of the Agent. Such personnel shall be reimbursable from Owner to Agent at the actual pay rate for the Maintenance Supervisor, and the actual pay rate for Maintenance Mechanics, so long as the actual pay rate does not unreasonably surpass the market pay rate for similarly skilled professionals.

C.   The Agent shall, subject to the direction of the Owner and according to standards established by the Owner, cause, at the expense of the Owner, the Property to be maintained consistent with the standards established by the Owner. The Agent shall provide specifications for, bid out, and present to Owner for review and approval recommended contracts for service at the Property, including refuse removal, landscaping, and snow removal as may be applicable. In fulfilling its responsibilities for management of the physical Property, Agent shall not incur any obligation or make any direct expenditure exceeding Ten Thousand Dollars ($10,000.00), without the prior written consent of the Owner, except for those items budgeted in the annual budget of the Property or as may be necessary in the event of an emergency which may involve a danger to life or Property or may threaten the suspension of any necessary service to the Property. In the event of such an emergency the Agent will confer as soon as practical with the Owner regarding any such expenditure. Upon request by the Owner, at no cost to Owner, the Agent shall act as construction manager for capital improvement projects, and working with Owner's architects and engineers, shall provide specifications for, bid out, and present to Owner for review and approval contracts and subcontracts for the construction of the capital improvements.

D.   Whenever services of independent contractors are employed in connection with the maintenance of the Property, Agent shall use its best efforts to secure such services at the best price available, taking into consideration

the quality of the work done by and the reliability of, such independent contractors. If an affiliate or division of Agent is employed to render such services, Owner must approve such employment in writing prior to commencement, and the cost of such to Owner shall not exceed the cost of like services had they been procured in the open market.

E.  Agent agrees to proactively market all available space at the Property to suitable tenants, locally, regionally, and nationally and work harmoniously with Owner's leasing agent at the Property. Agent, at Owner's expense, shall post advertising signage at the Property in form as approved by the Owner. The Owner shall approve any additional advertising or marketing costs proposed or incurred by the Agent at the expense of the Owner, in advance. Agent shall conduct all tenant relations and service all tenant complaints. Agent shall advise Owner of all major tenant complaints. Agent shall notify the Owner (and deliver to the Owner copies of all supporting documentation received by the Agent) promptly after the Agent (A) receives any actual notice of violation of any Legal Requirements, or (B) becomes aware of any material defect in the Property, any fire or other damage to the Property. The Agent shall maintain complaint files containing all complaints, claims, notices and correspondence to and from tenants, tenants' employees and agents, inspectors or agents of any state, Federal, county or municipal agent or department, and customers of tenants in the Property. Where legal assistance is required for such matters as enforcing the collection of rent or eviction of a tenant, such action shall be through legal counsel approved by Owner. The reasonable expenses for such legal counsel shall be borne by Owner, but may be payable out of gross revenues, if authorized by Owner. Agent shall also supervise and, if reasonably deemed necessary by Agent, at Owner's expense, enforce the obligations of others to the extent such obligations relate to the Property.

F.  Agent shall provide reports to Owner as requested below or by Owner's lender ("Lender"). The Agent shall prepare, or cause to be prepared, and send to the Person or Persons indicated below, the following reports and statements:

(i)  to the Owner, within ten (10) days after the end of each calendar month, or in accordance with any other schedule set by the Owner, (a) profit and loss statement; (b) budget variance analysis; (c) rent roll; (d) bank reconciliation of all cash accounts; and (e) a cash flow or source and application of funds statement, including cash distributed to the Owner. At the request of the Owner, the reports prepared as of the last calendar month of the year shall be audited by the Owner's independent accountants, who shall be a certified

public accounting firm either approved by the Owner or of national standing, which shall be prepared on an accrual basis, in accordance with generally accepted accounting principles, consistently applied, and which shall be delivered within sixty (60) days after the end of such fiscal year;

(ii)    to the Owner, within ten (10) days after the end of each calendar month, an accounts receivable aging report prepared as of the tenth (10th) day of such month through that date, which shall show all accounts receivable owed with respect to the Property and shall separately show each tenant of the Property that has not paid rent due under its lease for the current calendar month with a description of the collection status of all material past due balances;

(iii)    to the Owner, within twenty (20) days after the end of each calendar quarter, quarterly updates (in electronic form) of property cash flow performance in accordance with the template designated by the Owner;

(iv)    to the Owner, no later than forty-five (45) days prior to the commencement of each calendar year, a projection of the cash flow of the Property for the next calendar year, and providing, without limitation, detailed information concerning any proposed construction or renovation at the Property; and

(v)    such further statements and reports as may be reasonably requested by the Owner.

G.    The Agent shall maintain a comprehensive system of office records, books, and accounts, which records shall be subject to examination by the Owner or their authorized agents at reasonable hours.

H.    The Agent shall receive, and as necessary, show receipts for all monthly income and other charges due to the Owner for operation of the Property. The only responsibility that the Agent has for the collection of delinquent charges is as follows: On about the 10th of the month and again on or about the 20th of the month, send a past-due notice stating the current balance due. If the delinquent balance due is not received by the Agent by the tenth day of the following month, a list will be prepared by the Agent and sent to the Owner.

I.  The Agent shall deposit all monies collected by it on behalf of the Owner in a segregated account (the "Bank Account") at Wells Fargo Bank, or another Bank acceptable to Lender and the Owner, with the Agent listed as authorized agent with check writing authority, subject, however, to any restrictions that may be imposed herein or by Lender.  Agent shall promptly supply Owner with all identifying information concerning such accounts upon establishing such.  All such monies shall be and remain the property of the Owner, and shall be received, held and disbursed by the Agent in accordance with the provisions of, and for the purposes specified in, this Agreement.

J.  The Agent shall pay all expense of operation and management (including snow removal, landscaping, refuse removal, and all other charges or obligations incurred by the Owner with respect to the maintenance or operation of the Property or incurred by the Agent on behalf of the Owner pursuant to the terms of this Agreement or pursuant to other authority granted by the Owner) from the Owner's funds held by the Agent.  Agent shall indemnify, defend and hold Owner harmless from all late charges, default interest and liability actually incurred by Owner, whatsoever in connection with late payment of any of the foregoing due to Agent's gross negligence.

K.  Notwithstanding the limitations imposed by the preceding paragraph, the Agent may on behalf of the Owner without prior consent, expend or incur a contractual obligation in any amount required to deal with emergency conditions which may involve a danger to life or property or may threaten the suspension of any necessary service to the Property.  Agent shall, in the name of and at the expense of the Owner, make or cause to be made such repairs and/or alterations to the Property as may be advisable or necessary to keep the Property in a clean, safe and sightly condition which is consistent with the condition of properties in the area of a similar class, or as requested by the Owner, and to purchase such supplies in connection with the maintenance of the Property and such repairs and/or alterations as may be advisable or necessary.  Notwithstanding this authority as to emergency repairs, it is understood and agreed that the Agent will, if at all possible, confer immediately with the Owner regarding every such expenditure.

L.  The Agent shall maintain records showing all its receipts and expenditures relating to the Owner and shall promptly submit to the Owner cash receipts and disbursements statements for the preceding month on or before the twentieth day of the following month.  The statements submitted to the Owner shall be in a format mutually acceptable to both

the Agent, and the Owner. The Agent will provide copies of monthly financial reports to an external CPA firm if directed by the Owner.

M. The Agent shall prepare and submit to the Owner upon thirty (30) days prior request, but no more than ninety (90) days in advance of each new fiscal year and no more than once each year, a recommended budget (the "Annual Budget") in format acceptable to the Agent and the Owner for the next year showing anticipated receipts and expenditures for such year by major account area. The Agent shall obtain the prior written consent of the Owner for any expenditure exceeding ten percent (10%) of the total Annual Budget and for any single capital expenditure, or series of interrelated expenditures, in excess of $50,000. [Owner hereby approves the initial anticipated capital expenditures to be made to the Property in the amount of approximately $300,000 with respect to bathrooms, digital signage, elevator upgrades, landscaping and other items.]

N. Within forty-five (45) days after the end of each fiscal year, the Agent shall submit to the Owner a summary of all receipts and expenditures relating to the Owner for the preceding year, provided that this service shall not be construed to require the Agent to supply an audit. An audit required by the Owner shall be prepared at their expense by accountants of their selection. Accountants for the Owner shall, during normal working hours, have reasonable access to the books and records maintained by the Agent for the Owner.

O. The Agent will carry, at its expense, business insurance for its acts and omissions, and will name the Owner as an additional insured.

6. **RESPONSIBILITIES OF THE OWNER:**

A. The Owner shall, at the inception of this Agreement, and to the extent it is able, provide the Agent with: a copy of all insurance policies in force for the Property; copies of all contracts and agreements in force relative to the physical management of the Property; a listing of all tenant names, addresses, and contact numbers; keys to the Property as may be applicable; and any Property drawings as may be applicable.

B. The Owner shall deal with the Agent only through a designated single individual and in his/her absence an alternate, who shall be authorized to deal with the Agent on any matter relating to the management of the Owner. The Agent is directed not to accept directions or instructions with

regard to management of the Property from anyone else.  Owner agrees to refer all inquiries with regard to leasing directly to Agent during the term of this Agreement.

C.   The Owner agrees to carry, at its own expense, property, fire, hazard and liability insurance adequate to protect the Property and the interest of the Owner.  The Owner agrees to name the Agent as additionally insured upon such insurance in form, substance and amounts reasonably satisfactory to the Agent and to furnish Agent with certificates evidencing existence of such insurance.   The Agent shall obtain the foregoing insurance on Owner's behalf.

D.   The Owner shall be responsible for all real estate taxes attributable to the Property.  In furtherance of the foregoing, the Owner shall establish an escrow for the real estate taxes in the Bank Account, or such other account agreed to by the parties, from which the Agent will pay the real estate taxes for the Property.  The Owner shall replenish such escrow upon the request of the Agent. Agent shall have no responsibility for the adequacy of assessment calculations attributed to such tax invoices, however, shall assist the Owner with assessment reduction review services as may be requested by Owner.

E.   The Owner shall maintain at least $50,000 in the Bank Account at all times, and agrees to transfer funds into the Bank Account as otherwise reasonably requested by the Agent.

F.   If the Agent seeks the Owner's consent to expenditures pursuant to Section 5(M) above, the Owner shall not unreasonably withhold its consent and shall provide such consent in a timely manner not to interfere with the services to be rendered by the Agent.

7.   **MUTUAL COVENANTS, CONDITIONS, AND RESTRICTIONS.**

A.   The Agent shall have no authority to make any structural changes in the Property or to make any other major alterations or additions in or to any building or equipment therein, except such emergency repairs as may be required because of danger to life or property or the safety of the Property and occupants or are required to avoid the suspension of any necessary service to the Property, except upon authorization of the Owner.

B.   The Agent shall facilitate the Owner's investigation or processing of any insurance claim, or of implementation of any capital improvements to the Property. Agent shall assist the Owner with such services as may be needed and as may be facilitated by the Agent.

C.   In the event it is alleged or charged that the Owner, the Property or any equipment therein or any act of failure to act by the Owner with respect to the Property, or the sale, rental or other disposition thereof, or the hiring of employees to manage it fails to comply with, or is in violation of, any of the requirements of any constitutional provision, statute, ordinance, law or regulation of any governmental body or any order or ruling of any public authority or official thereof having or claiming to have jurisdiction thereover, and the Agent in its sole and absolute discretion considers that the action or position of the Owner with respect thereof may result in damage or liability to the Agent, the Agent shall have the right to cancel this Agreement at any time by written notice to the Owner of their election to do so, which cancellation shall not release the indemnities of the Owner set forth below and shall not terminate any liability or obligation of the Owner to the Agent for any payment, reimbursement or other sum of money then due and payable to the Agent hereunder.

D.   The Owner agrees to indemnify, defend and hold harmless the Agent, its members, employees, representatives and agents (an "Agent Party") from any claim or loss arising from personal injury, bodily injury, property damage, or alleged violations of any constitutional provision, statute, ordinance, law or regulation of any governmental body by reason of any cause (other than as a result of the Agent's proven gross negligence or willful misconduct, bad acts or criminal activity) in performance of this agreement either in or about the Property. The Owner agrees to defend promptly and diligently, at their sole cost and expense, any such claim, action, or proceeding brought against the Agent or an Agent Party.

E.   The Agent agrees to indemnify, defend and hold harmless the Owner, its members, employees, representatives and agents (an "Owner Party") from any claim or loss arising from personal injury, bodily injury, property damage, or alleged violations of any constitutional provision, statute, ordinance, law or regulation of any governmental body caused by the proven gross negligence or willful misconduct of the Agent, its representatives, servants or employees in the performance of this Agreement. The Agent agrees to defend promptly and diligently, at its sole cost and expense, any such claim, action or proceeding brought against the Owner.

F.    Any notice to be served hereunder may be served by registered mail, recognized national overnight courier, or in person as follows:

1.    If to the Agent:

*Nightingale Realty, LLC*
*1430 Broadway, Suite 1605*
*New York, New York 10018*
*Attn: Ben Fishbane*

2.    If to the Owner:

*NG One Hartsfield Centre LLC*
*Attn: Mr. Elie Schwartz*
*1430 Broadway, Suite 1605*
*New York, NY 10018*

8.    ADDITIONAL RESPONSIBILITIES OF THE AGENT.

A.    The Agent shall place for the benefit of the Owner the forms of insurance required by, or by law or generally maintained by owners of similar properties in the county in which the Property is located (including environmental coverages), and cause to be paid from the Bank Account all bills for insurance premiums promptly upon receipt thereof. The Agent shall furnish the Owner and its representatives with such information as may be requested by the Owner for the purpose of establishing the placement of insurance coverage and shall aid and cooperate in a very reasonable way with respect to such insurance and any loss thereunder. If available, the Owner shall include in its hazard policy covering the Property, all personal property, fixtures and equipment located thereon, and the Agent shall include in any fire policies for its furniture, furnishings or fixtures situated at the Property, appropriate clauses pursuant to which the respective insurance carriers shall waive all rights of subrogation with respect to losses payable under such policies. The Agent shall promptly investigate and timely make a full written report to the applicable insurance company to which a claim is being made, with a copy to the Owner as to all accidents, claims or damages relating to the ownership, operation and maintenance of the Property, any damage or destruction to the Property and the estimated cost of repair thereof; and shall prepare any and all reports as may be required by the terms of the applicable insurance policy or by any applicable insurance company in

connection therewith. The Agent shall have no right to settle, compromise or otherwise dispose of any claims, demands or liabilities, whether or not covered by insurance, without the prior written consent of the Owner. The Agent shall require that all independent contractors and/or subcontractors engaged to enter upon the Property shall have insurance coverage at the subcontractor's expense which is required by the Loan Documents or the following minimum amounts, whichever is greater:

    (i)    Workmen's Compensation - Statutory Amount.

    (ii)    Employer's Liability - $1,000,000 (minimum).

    (iii)    Public liability - $2,000,000 Bodily Injury $1,000,000 Property Damage, or $2,000,000 Combined Single Limit with $3,000,000 Umbrella Policy

All such policies shall name the Owner as an additional insured;

B.    The Agent shall commence, defend, and/or settle, all with the Owner's consent and at the Owner's cost, litigation or other claims regarding the Property as directed by the Owner.

C.    The Agent shall engage, at the Owner's expense, attorneys, accountants, brokers, architects, engineers and other such persons or entities, as it may deem necessary or advisable subject to the Owner's prior written consent in each case;.

D.    The Agent shall hire for the benefit of the Owner and supervise sufficient qualified on site personnel as may be necessary for the Agent to perform all of its obligations hereunder in accordance with all of the requirements and standards set forth herein. All such personnel shall be the employees and agents of the Agent and not the employees or agents of the Owner. The Agent, and not the Owner, shall be liable to such employees and supervisory employees for their wage and benefits, and shall be liable for the withholding and payment of all taxes, including social security taxes, and for the payment of all Workers' Compensation premiums, unemployment insurance contributions, costs of benefits to which employees are entitled under any collective bargaining agreement and all other costs related to the Owner's status as an employer;.

000834

E.    The Agent shall maintain, as per the amount agreed upon in the Annual
      Budget, reserves for operating accounts, capital expenditures and/or
      capital improvements and/or any other reserves required by Lender;
      provided that so long as the loan to Lender is outstanding, the reserves
      shall be held in accounts as set forth in Lender's loan documents.

F.    The Agent shall maintain a comprehensive system of office records, lease
      files, books of account with respect to the Property and such other records,
      files and books of account as shall be required to document and calculate
      the payments required to be made by the Agent pursuant to this
      Agreement; permit a designated member of the Owner and their respective
      duly authorized representatives to examine such records, files and books
      of account at all reasonable times, upon reasonable notice, and furnish
      copies thereof to a designated member of the Owner upon request
      therefore.

G.    The Agent shall obtain and thereafter maintain all usual and customary
      licenses, permits and certificates from all applicable public and/or
      governmental authorities necessary or required to operate the Property and
      all portions thereof for their intended purposes;

H.    The Agent shall cause, the Property, or assist the Owner, as may be
      necessary in order to cause the Property to be in compliance with any and
      all Legal Requirements affecting the Property or any federal, state, county
      or municipal authority having jurisdiction thereover, unless the Agent, on
      the Owner's behalf, is contesting, or has affirmed its intention to contest,
      any such Legal Requirement.

I.    The Agent shall diligently attempt to ascertain, and promptly report to the
      Owner with respect to, any hazardous conditions in or upon the Property,
      and subject to the other terms and conditions of this Agreement, take such
      immediate remedial action at the Owner's expense as may be necessary to
      prevent injury to persons or damage to property as a result.

J.    The Agent shall promptly deliver all notices from any governmental or
      official entity to the Owner.

K.    The Agent shall promptly and diligently collect all monthly rents and
      other charges due from tenants of the Property, including minimum rents,
      additional rents (including, but not limited to, operating expenses, taxes
      and utilities), percentage rents and maintenance charges and deposit such

000835

funds in the Bank Account; provided that so long as the loan encumbering the Property is outstanding, such funds shall be deposited in accordance with Lender's loan documents and institute, on behalf of and in the name of the Owner's, as authorized representative of the Owner and at the Owner's expense (and after the Owner's consent), any legal actions or proceedings for the collection of rent or charges due from tenants or for eviction of tenants.

L.   The Agent shall secure, as fully as practicable, the compliance of tenants with the terms, covenants and conditions of their leases; service requests by tenants shall be received and promptly considered; complaints of a material nature shall be immediately reported to the Owner and, after thorough investigation the Agent shall provide to the Owner appropriate recommendations.

M.   The Agent shall cooperate with the Owner's accountants in regard to the preparation and filing by the Owner of all federal, state, city and any other income or other tax returns required by any governmental authority.

N.   The Agent shall supervise the moving in and out of tenants and subtenants and arrange, to the extent possible, the dates thereof so that there shall be a minimum of disturbances to the operation of the Property and inconvenience to other tenants or subtenants and render an inspection and report thereof with respect to any space which has been vacated including an assessment for damages and the disposition of any deposit held as security for the performance by the tenant under its lease with respect to the space vacated.

O.   The Agent shall check all bills received for the services, work and supplies ordered in connection with maintaining and operating the Property, and, except as otherwise herein, perform such other services of an advisory or managerial nature as Owner shall reasonably request.

P.   The Agent shall enter into all necessary collective bargaining agreements regarding the Property for the benefit of Owner and with its prior written approval.

Q.   prepare monthly and quarterly financial reports in a form acceptable to Owner and Lender (or any subsequent mortgagee).

9.    **MISCELLANEOUS**:

A.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns; provided, however, that this Agreement may not be assigned by Agent without the prior written consent of Owner.  Agent shall not delegate the performance of any duties and obligations of Agent to any independent contractor or entity without the prior written consent of Owner.

B.    In the event that Owner sells or transfers the Property, Owner or Agent shall have the right to terminate this Agreement at any time within thirty (30) days following notice from Owner to Agent that the Owner has entered into a contract or agreement to do so.  A sale or transfer of the Property shall be deemed to have occurred if Owner conveys title to the Property to an unaffiliated third party, or if Owner sells, assigns or transfers a controlling interest in Owner, i.e. a controlling stock interest if Owner is a corporation or a controlling membership interest if Owner is a limited liability company.  Owner shall immediately notify Agent in the event Owner sells or transfers the Property or enters into any contract or agreement to do so.

C.    This Agreement shall be construed according to the laws of the State of New York and the invalidity of any provision of this Agreement shall not affect any other provisions hereof, and the Agreement shall be construed in all respects as of such invalid or unenforceable provisions were omitted.  Any action or proceeding relating to this Agreement shall be adjudicated in a court located in New York.  The parties hereby irrevocably consent to the jurisdiction of the courts and waive any objection that this venue may be inconvenient.

D.    This Agreement embodies the entire agreement and understanding between the parties and there are no representations, warranties, terms, covenants or conditions made by either of the parties except as herein expressly contained.  This Agreement may only be amended by a document in writing signed by both parties.

E.    Owner and the Agent hereby acknowledge and agree that Agent is not and shall not be considered for any purposes an employee of the Owner.  Agent shall at all times and for all purposes be, and shall act and render services as contemplated hereunder solely as an independent contractor.  As an independent contractor, the Agent acknowledges and agrees that it

000837

is solely responsible for any and all employment taxes imposed as a result of receiving compensation under this Agreement.

F.    This Agreement may be executed in multiple counterparts each of which may be deemed an original and shall become effective when the separate counterparts have been exchanged among the parties.    Facsimile and electronic signatures shall be deemed original signatures for all purposes of this Agreement.

*[Signature Page Follows]*

000838

IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed, their respective signatures this 28th day of January, 2013.

OWNER:

NG One Hartsfield Centre LLC

By:    The Nightingale Group, LLC

By: Elie Schwartz
Its: Managing Member

AGENT:

**NIGHTINGALE REALTY, LLC**

By:
Name: Elie Schwartz
Title: President