UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY SERVICES, LLC, | ) ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) ) | |
| ROBERT TRAUNER, AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF CARTER BROTHERS SECURITY SERVICES, LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | ADVERSARY PROCEEDING |
| | ) ) | CASE NO. 20-06124-JWC |
| NIGHTINGALE REALTY, LLC | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND COMPLAINT**

COMES NOW, Nightingale Realty, LLC, Defendant in the above-styled action, by and through its undersigned counsel and, under LR 7.1(B) and F.R.C.P. 26(c), hereby timely files files this, its Response in Opposition to Plaintiff's Motion to Amend Complaint, stating that Defendant Nightingale Realty, LLC opposes Plaintiffs Motion to Amend Complaint as it grossly misstates the facts of the subject matter pending before this Court. Moreover, Defendant was not provided sufficient time to respond to the factual

allegations contained in Plaintiff's Motion to Amend, which was served by First Class mail only, did not contain a post mark, and was received by Plaintiff's counsel on February 1, 2022. See Exhibit "A" attached hereto. Defendant therefore denies all factual allegations contained in Plaintiff's Motion to Amend Complaint and would be happy to further brief this issue upon the Court's request.

Respectfully submitted, this 10th day of February, 2022.

/s/John J. Wiles
John J. Wiles, Esq.
Georgia Bar No. 758698

/s/Caleb L. Swiney
Caleb L. Swiney, Esq.
Georgia Bar No. 482751

Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia 30060-7946
(770) 426-4619
(770) 426-4846 – Facsimile
N79\Motion in Opposition to Motion to Amend.docx

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within and foregoing DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT, by email and by depositing a copy of said documents in the United States mail with sufficient postage affixed thereon to ensure delivery to the person and address listed below:

>Todd E. Hennings
>Attorney for Plaintiff
>Macey, Wilensky & Hennings, LLP
>5500 Interstate North Parkway, Suite 435
>Atlanta, Georgia 30328
>thennings@maceywilensky.com

This 10th day of February, 2022.

>/s/ Caleb L. Swiney
>Caleb L. Swiney, Esq.
>Georgia Bar No. 482751

Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia 30060-7946
(770) 426-4619
(770) 426-4846 – Facsimile
N79\Motion in Opposition to Motion to Amend.docx





John J. Wiles, Esq

FEB - 1 2022

John Wiles
Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, GA 30060-7946

Macey, Wilensky & Hennings, LLP
5500 Interstate North Parkway, Suite 435
Atlanta, GA 30328

EXHIBIT "A"

John J. Wilon, Esq

FEB - 1 2022

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY SERVICES, LLC, | ) ) | CHAPTER 7 |
| Debtor. | ) ) | |
| ROBERT TRAUNER, AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF CARTER BROTHERS SECURITY SERVICES, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ADVERSARY PROCEEDING |
| NIGHTINGALE REALTY, LLC | ) ) | CASE NO. 20-06124-JWC |
| Defendant. | ) ) | |

## MOTION TO AMEND COMPLAINT

COMES NOW Robert Trauner, as Chapter 7 Trustee for the Estate of Carter Brothers Security Services, LLC, ("Plaintiff" or "Trustee") and pursuant to Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15(c), requests the Court amend the Complaint to add as defendants the entity "NG One Hartsfield Centre, LLC" ("NG One") and its currently unknown owners[1]; The Nightingale Group, LLC; Nightingale Properties, LLC; as well as to allow additional claims, showing the following:

### I. Introduction

---

[1] As these individuals or entities are currently unknown to the Trustee, they will be referred to as John Does 1-10 herein.

This is an adversary action to avoid pre-petition transfers made by the Debtor Carter Brothers Security Services, LLC ("CBSS") to the entity which rented office space to a number of CBSS's principal's businesses. Plaintiffs' Complaint alleges a pattern and practice by CBSS and its principal, John Carter, whereby Carter caused CBSS to pay debts owed by other entities operated by Carter. [Doc. 1]. This is not the extent of the pattern, however. Carter used company assets to pay his own personal obligations, to pay the debts of his other companies and to support payments to himself that would otherwise not have been possible, given the fact that the Debtor was insolvent at all relevant times herein.

#### A. The Defendant Entities

Trustee's investigation has yielded the following facts concerning the various Nightingale entities, which present themselves publically as one "vertically integrated" real estate firm.[2] Nightingale Properties, LLC and/or Nightingale Group, LLC, is a corporate parent[3] for multiple entities using the name Nightingale in their names. This Nightingale parent owns, controls or manages approximately fifty entities, which appear to be single purpose entities each holding real estate in various parts of the country. Nightingale Realty, LLC, the current defendant, purports to be an agent for these various entities. However, all of these entities share the same website and marketing. The Nightingale entities, including the current Defendant and alleged agent, are operated out of the same office in New York City, by the same people, sitting at the

---

[2] The website for the various Nightingale entities does not shed any real light on the relationship between these entities. The url is for "thenggroup," while the watermarks are labeled "Nightingale Properties." *See* https://thenggroup.com/; *see* Ex. 2. Entities bearing each name have been registered as New York limited liability companies. Furthermore, at various places in the website and marketing materials to investors Defendant Nightingale Realty is described interchangeably with other Nightingale entities. *See* Ex. 5; https://thenggroup.com/about/#page_genesis.

[3] This information comes from public records searches and other publicly available information. Trustee has attempted to determine the precise roles of these entities through discovery, but Defendant has refused to provide any such information and this is the subject of a discovery dispute. Until precise information is provided, Trustee is uncertain of the respective roles and given the substantial overlap of management, operations and control, it does not appear that there is any true distinction between these entities and they are identified herein reflecting that fact.

from a Wells Fargo Lockbox account of NG One's showing the deposit of Check No. 3309[5]; however, it is unclear how Nightingale Realty has copies of this deposit if it truly is separate and ignorant of the financial dealings of NG One. Because of the substantial overlap in ownership, control and management of these entities, it is likely that the corporate veil is exceedingly thin.

The Trustee has also discovered an additional $120,000 of payments to allegedly the same Nightingale entity, through Defendant's counsel Wiles & Wiles. While Defendant has produced some records concerning the original transfer identified in the Complaint, counsel for Defendant has not produced any records pertaining to these additional funds. These payments were part of the same settlement agreement transaction where CBSS was obligated to pay the debts of Carter Brothers, LLC and also pattern and practice of fraudulent behavior as those described in the Complaint. In this case, these payments were made as part of an elaborate settlement agreement between John Carter and NG One, intended to pay the debts of Carter Brothers, LLC.

NG One sued Carter Brothers, LLC, as its tenant, under the lease between NG One and Carter Brothers, LLC. However, Mr. Carter had already sold Carter Brothers, LLC to an entity known as "Tyco Integrated Security, LLC" and pocketed several million dollars, personally. When Carter Brothers, LLC was sued, Tyco threaten to declare a default under the relevant asset purchase agreement with Mr. Carter. In order to avoid this default, counsel for NG One (Wiles & Wiles—counsel herein) suggested, and Mr. Carter agreed, to substitute CBSS in as defendant in the relevant litigation, although CBSS had no lease or other contractual privity with NG One.[6] Mr. Carter accomplished this by suing his own company (CBSS) and adding CBSS as defendant in the lawsuit. Thereafter, CBSS (by Mr. Carter) agreed to obligate itself on a settlement

---

[5] This check is currently described in the Complaint.
[6] See Ex. 4.

5

---

agreement with NG One in place of Carter Brothers, LLC. This scheme allowed Carter Brothers, LLC to avoid any liability under its lease, caused NG One to dismiss Carter Brothers, LLC from the lawsuit and allowed Mr. Carter to retain several million dollars from the sale of Carter Brothers, LLC.

The transfers were accomplished by CBSS making payments on Carter Brothers, LLC's lease with NG One for the remainder of the life of the lease[7]. Regular payments on the lease within the statute of limitations totaled $19,162.51, as well as an additional $120,000 paid to counsel for these defendants, Wiles & Wiles, as part of the settlement agreement.[8] Debtor's records did not contain anything concerning the settlement agreement or the connection between Wiles & Wiles as counsel and the Nightingale entities. Because these later checks were not in the name of one of the Nightingale entities, but rather went to the IOLTA account of counsel, the Trustee only became aware of their relationship to this matter recently by correlating discovery in this adversary proceeding to Rule 2004 discovery and document production from CBSS' former counsel. However, all of these transfers were made pursuant to the same settlement agreement where Mr. Carter agreed to have CBSS pay the lease obligations of Carter Brothers, LLC.

C. *The Trustee's Motion*

Wiles & Wiles has not produced records showing where the $120,000 paid by CBSS was transferred. Because NG One is alleged to have been dissolved, the Trustee seeks to include the members of the NG One Hartsfield Centre, LLC entity as defendants in this action. To the extent that members of NG One received distributions of assets, which would include monies

---

[7] Although CBSS made hundreds of thousands of dollars in regular lease payments after being forced as guarantor to save Carter Brothers, LLC and Mr. Carter, only the last lease payment, for $19,162.51, falls within the relevant statutes of limitation for this action.
[8] Although additional payments under this settlement were made by Mr. Carter, personally, these transfers do not seem to have originated from or consisted of property of the CBSS debtor.

6

CBSS in the amount of $19,162.51 to Nightingale Realty, LLC and correspondence between Wiles & Wiles and CBSS' counsel obtained through Rule 2004 discovery, it was revealed that an additional $120,000.00 made payable to Wiles & Wiles, LLP[11], the Defendant's attorneys and the attorneys for NG One in the lawsuit with Mr. Carter. The payments by Debtor were in reality for the benefit of Nightingale Realty, Nightingale Properties, The Nightingale Group, and/or NG One. Counsel for the Trustee brought this to Defendant's attention and indicated the intention to file this Rule 15 Motion to add these additional entities and the additional transfers made through Wiles & Wiles. However, at the specific request of Defendant's counsel, Trustee refrained from amending the Complaint in an attempt to give the parties time to pursue discovery and explore the potential for settlement.

Nightingale Realty's counsel has represented that it passed the payments in question on to NG One, but that NG One had been liquidated and was no longer in existence. The Trustee has subsequently sent Nightingale Realty discovery requesting more information about the settlement payments, the liquidation of NG One, and the corporate structure of the various entities within the Nightingale umbrella, including Nightingale Realty, NG One, and The Nightingale Group, LLC, the owner of Nightingale Realty and manager (and potential owner) of NG One. The Trustee further requested the identity of any NG One members that received distributions as part of its liquidation.

When Nightingale Realty denied having knowledge pertaining to these requests, the Trustee sent a good faith demand letter in accordance with BLR 7037-1 on October 15, 2021. In response, Defendant maintained its position and filed a unilateral motion for mediation, which was heard and denied by this Court on December 16, 2021. While the Trustee is and always has been

---

[11] When asked about these checks in the initial stages of this proceeding, before the discovery of the settlement agreement, an attorney for Wiles & Wiles, LLP denied any relationship between those payments and this proceeding.

9

willing to pursue mediation as an alternative to litigation, Defendant's counsel has stated repeatedly that he does not represent any of the parties other than Nightingale Realty and only wished to mediate concerning the alleged pass through defense of his client.[12] With Defendant's refusal to identify any of the parties receiving or otherwise benefiting from the transfers (with the exception of one it alleges is defunct and has been liquidated), there is nobody with whom the Trustee can negotiate with concerning the transfers at issue. The Trustee concluded that mediation was not a productive use of his counsel's time and the associated expense for the estate until the Trustee can identify the parties who ultimately received the Transfers.[13]

Now, in lieu of seeking to compel production of records from an allegedly defunct entity by Rule 2004 exam and subpoena, Trustee has instead determined that the most productive and efficient manner to proceed is to seek authority of this Court to add NG One, Nightingale Properties, LLC, The Nightingale Group, LLC, and the currently unnamed equity holders of NG One as defendants in this action. Once this has taken place, it is Trustee's earnest hope that the parties in interest owning and controlling NG One, and for whose benefit the transfers were made, will then be willing to mediate or otherwise join the Trustee in his efforts towards resolution of this case.

### III.   Argument and Authority

Given Nightingale Realty's insistence that it has no knowledge of the workings of an entity it was an agent for, which was operated in the same offices by the same individuals, the Trustee is convinced the only way this proceeding can move forward is by adding all related entities and claims to the Complaint. Nightingale Realty contends that NG One is the actual recipient of the $19,162.51 identified in the original Complaint. Neither Defendant nor

---

[12] See Ex. 4.
[13] This question was heard by the Court in a status conference on December 16, 2021.

10

a. *The newly discovery transfers were part of the same pattern and practice of conduct as described in the initial Complaint.*

If no substantial reason exists to deny leave to amend, Rule 15(c)(1)(B) provides that the amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

"The central consideration of Rule 15(c)(2) is whether there is a nexus between the factual allegations in the original pleading and those in the amended complaint." *Burtch v. Dent (In re Circle Y of Yoakum, Tex.)*, 354 B.R. 349, 357 (Bankr. D. Del. 2006). Relation back is allowed "where the amended complaint does not allege a new claim but renders prior allegations more definite and precise . . . . In other words, where the facts alleged in the amended complaint are the 'natural offshoot' of the scheme alleged in the original complaint, relation back is allowed." *In re Presley*, 2012 Bankr. LEXIS 6032, at *6-7 (citing *Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)). "On the other hand, amendments generally will not relate back if they interject *entirely* different facts, conduct, transactions or occurrences." *McAFEE v. Harman (In re Harman)*, No. 11-05534-LRC, 2021 Bankr. LEXIS 586, at *21-22 (Bankr. N.D. Ga. Mar. 12, 2021) (Ritchey Craig, J.) (citing *In re Universal Factoring Co., Inc.*, 279 B.R. 297, 303 (Bankr. N.D. Okla. 2002)) (emphasis added).

Because the phrase "conduct, transaction, or occurrence" found in Rule 15(c) is cast in the disjunctive, "the allegations in the Amended Complaint need not arise from the same transaction or occurrence attempted to be set forth in the [Initial] Complaint, so long as it springs from the same conduct." *In re Harman*, 2021 Bankr. LEXIS 586, at *21-22 (citing *In re Universal Factoring Co., Inc.*, 279 B.R. at 307 (internal citation marks omitted). "As many courts have recognized, the most important factor in determining whether a pleading relates back

13

is 'whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading.'" *In re Mack Indus., Ltd.*, 2021 Bankr. LEXIS 114, 2021 WL 192000, *2 (Bankr. N.D. Ill. 2021). "In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim." *Gelling v. Dean (In re Dean)*, 11 B.R. 542, 545 (9th Cir. B.A.P. 1981), aff'd, 687 F.2d 307 (9th Cir. 1982) (citing 3 Moore's Federal Practice para. 15.15[3], pps. 15-196-205 (2d Ed. 1980)). Additionally, "[w]here there are a series of transfers, it is necessary that the Court examine 'whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent transaction.'" *In re Bennett Funding Group, Inc.*, 275 B.R. 447, 451 (Bankr. N.D.N.Y. 2001) (quoting *Austin Driveway Servs, Inc.*, 179 B.R. 390, 396 (Bankr. D. Conn. 1995)).

Plaintiff's Complaint seeks to recover fraudulent transfers made by the Debtor, where the Debtor had no legal obligation or privity of contract with the defendants. Trustee sought to recover $19,162.51 in payments where CBSS was not obligated on the debt, and has now uncovered an additional $120,000 in transfers that were made through Defendant's counsel, Wiles & Wiles. These claims are brought pursuant to 11 U.S.C. § 548 as well as 11 U.S.C. § 544 incorporating O.C.G.A. § 18-2-70. For the purposes of this Motion, Plaintiffs incorporate by reference the arguments and allegations made pursuant to those statutes in the Complaint.

Plaintiff alleged a common pattern and practice of conduct according to which the Debtor made the transfer listed in the Complaint. This pattern and practice involved the Debtor's

14

the actions would have been brought against it but for a mistake of identity. Each of these elements is satisfied in this instance.

First, the Complaint was filed on July 7, 2020. The Defendant was served on July 13, 2020, six days later. This service was acknowledged by Defendant on August 7, 2020, approximately 31 days after the filing of the Complaint. As a threshold matter, service was accomplished within the requirements of Rule 4(m).

Second, NG One and/or its owners received notice of the Complaint. According to public records[14] and Defendant's interrogatory responses[15], Nightingale Realty is owned 99% by The Nightingale Group, LLC, 0.5% by the Simon Singer Family Trust, and 0.5% by the Elchonon Schwarz Family Trust. Elie Schwartz is the CEO of The Nightingale Group. The principal address of Nightingale Realty is 1430 Broadway, Suite 1605, New York, NY 10018. The principal address of The Nightingale Group is also 1430 Broadway, Suite 1605, New York, NY 10018.

NG One was managed by The Nightingale Group, according to public records. Its principal address was also 1430 Broadway, Suite 1605, New York, NY 10018. Furthermore, Nightingale Realty produced a managing agreement between it and NG One in which The Nightingale Group, LLC, signs for NG One Hartsfield Centre LLC. The signature is made by Elie Schwartz, managing member of The Nightingale Group. LLC. Elie Schwartz also signs as President of Nightingale Realty, LLC. The Nightingale Group, LLC, upon information and belief, was a party for whose benefit the transfers were made, either through ownership of Nightingale Realty, NG One or otherwise deriving income from the Debtor's payments.

This suggests The Nightingale Group, the owner and operator of Nightingale Realty, was in fact the former owner and operator of NG One. Even if it only operated, and did not own NG One, by virtue of sharing the same office space as Nightingale Realty and by the same individuals as Nightingale Realty any notice that went to Nightingale Realty also went to NG One. The exact same individuals who would have been served had Plaintiff served the Complaint against NG One initially received the Complaint on July 13, 2020, demonstrating actual notice of the Complaint on the part of the necessary parties.

Third, and finally, NG One and/or its former owners knew, or should have known, the action would have been brought against it but for a mistake of identity. The Complaint describes one payment via CBSS Check No. 3309, dated July 7, 2014, for the amount of $19,162.51, that was made as part of a larger pattern and practice of fraudulent behavior by John Carter. The Defendant's subsequent communications have demonstrated this was sufficient to put the Nightingale entities on notice that this payment supposedly went to NG One. Furthermore, the Nightingale parties were aware that this payment was based upon a lease to which CBSS was not a party. This same lease, meanwhile, provided the impetus for the suit by NG One against Mr. Carter described above which led to CBSS's being made to pay the majority of Mr. Carter's settlement agreement to NG One. NG One was thus aware of the exact transfer in question, that the transfer in fact went to it, and that the transfer was based upon a lease and contrived settlement that provided the basis for an additional $120,000.00 in payments from CBSS according to the pattern and practice described in the Complaint.

### IV. Conclusion

The various entities going by variations on the name "Nightingale" are attempting to use their own complex corporate structure to avoid liability through legal fiction. Each operates from

---

[14] Ex. 2.
[15] Ex. 3.

17

18

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:  ) CASE NO. 18-61490-JWC
 )
CARTER BROTHERS SECURITY ) CHAPTER 7
SERVICES, LLC, )
 )
Debtor. )
 )
ROBERT TRAUNER, AS CHAPTER 7 )
TRUSTEE FOR THE ESTATE OF )
CARTER BROTHERS SECURITY )
SERVICES, LLC, )
 )
Plaintiff, ) ADVERSARY PROCEEDING
 )
v. ) CASE NO. 20-06124-JWC
 )
NIGHTINGALE REALTY, LLC )
 )
Defendant. )

## CERTIFICATE OF SERVICE

I, Todd E. Hennings, certify that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the 24th day of January, 2022, I caused to be served a copy of the within Plaintiffs' Motion to Amend Complaint by depositing same in the United States Mail, postage prepaid, to the following:

Nightingale Realty, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

The Nightingale Group, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

Nightingale Properties, LLC
Attn: Elie Schwartz, CEO
1430 Broadway, Suite 1605
New York, NY 10018

NG One Hartsfield Centre, LLC
Attn: Andrew Martin, CFO and Manager
1430 Broadway, Suite 1605
New York, NY 10018

John Wiles
Wiles & Wiles, LLP
800 Kennesaw Avenue, Suite 400
Marietta, Georgia 30060-7946

Executed on:  January 24, 2022.

/s/
Todd E. Hennings, State Bar No. 347302

21

22

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE | CASE NO. 18-61490-JWC |
| CARTER BROTHERS SECURITY, SERVICES, LLC. | CHAPTER 7 |
| Debtor. | |
| Robert Trauner, as Chapter 7 Trustee for the Estate of Carter Brothers Security Services, LLC, | |
| Plaintiff. | |
| v. | Adversary Proceeding No. |
| Nightingale Realty, LLC; and The Nightingale Group, LLC; and Nightingale Properties, LLC; and NG One Hartsfield Centre, LLC; and John Does 1-10 | |
| Defendant. | |

## FIRST AMENDED
## COMPLAINT TO AVOID AND RECOVER TRANSFERS

NOW COMES Robert Trauner, Trustee in the above-captioned Chapter 7 proceeding (the "Trustee"), by and through his counsel of record and brings this Complaint to Avoid and Recover Transfers (the "Complaint") made to and against the above styled defendants Nightingale Realty, LLC; The Nightingale Group, LLC; Nightingale Properties, LLC; NG One Hartsfield Centre, LLC; and its currently unknown former members John Does 1-10 (collectively, "Defendants"), as follows:

## JURISDICTION AND VENUE

1.

This Adversary Proceeding arises out of and is related to the above-styled case pending before this United States Bankruptcy Court; therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.

2.

This Adversary Proceeding is brought pursuant to 11 U.S.C. §§ 510, 548, 544 and 550 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.

This Complaint is a core proceeding pursuant to 28 U.S.C. §157.

4.

Pursuant to an Order styled In re Jurisdiction of the United States Bankruptcy Court for the Northern District of Georgia, dated July 12, 1984, entered by the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. §157(a), this Adversary Proceeding is referred to this Court.

the two years of the bankruptcy petition date were made after CBSS had ceased operations.

- He caused the Debtor to pay his own financial obligations and to support a lavish lifestyle of luxury automobiles, country club memberships, and golf club memberships to name a few examples. Mr. Carter had no employment agreement with Debtor and provided himself with the trappings of wealth without regard to the Debtor's financial condition or ability to pay, continuing to fund his own expenses out of the company coffers even after CBSS ceased operations.

- Mr. Carter caused the Debtor to pay out management fees to Mr. Carter's other wholly owned businesses totaling millions of dollars over the four years preceding the CBSS case filing.

- Mr. Carter caused the Debtor to fund legal fees for himself and other individuals in litigation that was of no benefit to the companies.

- Mr. Carter transferred numerous assets of Debtors to himself, personally, with no basis for the transfers other than his own personal benefit.

- Mr. Carter has mischaracterized transactions between himself and Debtor and has falsified company records. He has variously labeled the same transactions as either debt or equity, depending upon his current personal needs.

10.

The transfers described herein and in the "pattern and practice" of behavior alleged demonstrates Mr. Carter's intent that the legitimate creditors of the Debtor would remain unpaid, while he committed the Debtors' limited assets to his own comfort, his own enrichment and his continued ability to draw monies from the Debtor far beyond its insolvency.

**Insolvency**

Carter Brothers Security Services, LLC Insolvency

11.

Under the facts of this case, the company's insolvency is both evidence of Mr. Carter's actionable intent under 11 U.S.C. § 548(a)(1)(A), as well as being part of the statutory elements of subpart (a)(1)(B), which is also alleged in the Trustee Complaint. The Plaintiffs' forensic accountant has determined that CBSS was insolvent on a balance sheet basis from the first quarter of 2014 through the point when CBSS ceased doing business on or about June 1, 2016. Of course, from that point on, CBSS had no operations and no ability to fund obligations, rendering it insolvent on any measurable basis.

12.

From the first quarter of 2014, CBSS consistently lost monies, posting losses in the millions of dollars in any given calendar year. In audited financial statements[1] issued in 2014 and 2015, professional third party accountants noted the ongoing losses and cautioned that without a consistent influx of new capital, CBSS would collapse. Instead, Mr. Carter systematically looted the company.

13.

John Carter maintained a façade of doing business in order to continue to pay for his own luxury vehicles, memberships in exclusive clubs and continued to systematically loot CBSS of assets.

---

[1] The financial statements were consolidated covering both CBSS and D&N.

20.

At all times relevant hereto, and as set forth in detail above, Debtor was insolvent within the meaning of the Bankruptcy Code when the transfers were made, in that the sum of its debts was greater than the fair value of its assets. 11 U.S.C. §101(32)(A). Furthermore, the transfers as outlined herein left the Debtor without operating capital necessitating further fraudulent transfers in what was an ongoing pattern and practice of conduct.

21.

Trustee may avoid all transfers, including but not limited to those set forth expressly in this Complaint, made from Debtor to Defendant on or within two years before the Petition Date pursuant to 11 U.S.C. §548.

22.

Accordingly, Trustee is entitled to avoid and recover the transfers together with pre-judgment interest from the date of the Trustee's first Demand and post-judgment interest as allowed by law from the date of the entry of the judgment until paid. 11 U.S.C. §548.

## COUNT II

### FRAUDULENT CONVEYANCES UNDER STATE LAW
### O.C.G.A. §18-2-70, et. seq,; 11 U.S.C. §544; 11 U.S.C. §550

23.

Trustee incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 22 of this Complaint. Like Count I. above, the Trustee seeks to avoid the transfers identified herein as both actually and constructively fraudulent. O.C.G.A. § 18-2-74(a) and (b). The Trustee has the standing of a creditor holding a judgment against the Debtor. 11 U.S.C. § 544(a). The transfers identified herein are voidable under relevant state law by creditors sharing the statutory standing of the Trustee. 11 U.S.C. § 544(b).

24.

On or within four (4) years before the Petition Date. the Debtor made transfers of money or property to or for the benefit of Defendants, as described hereinabove. The payments made by the Debtor to Defendants are set forth herein by date, payor and amounts. To the extent the Trustee discovers the existence of additional transfers to Defendants within the four (4) years prior to the Petition Date, the Trustee intends to recover all such transfers, and this Complaint is not limited to those Transfers disclosed as part of the defined term.

25.

As set forth herein, Debtors received less than a reasonably equivalent value in exchange for the transfers. To the extent that Debtor paid the debts owed by other companies to which they were not obligated, including but not limited to the payments set forth hereinabove, Debtor received no value for the transfer.

26.

Defendant did not act in good faith. Defendants accepted payments from companies that were not obligated to them on debts owed by another.

### RESERVATION OF RIGHT TO AMEND

35.

The Trustee reserves the right to amend this Complaint pursuant to a requested accounting as well as other discovery should facts be discovered to justify the assertion of additional claims, including but not limited to any and all claims arising under Title 11, U.S.C. or applicable state law. This Adversary Proceeding is intended to address, and recover, all payments made to Defendant within the relevant time frames and Defendant is on notice of the fact that this Complaint is not limited to the specific transactions described herein. To the extent that Defendant may identify another beneficiary, Trustee will seek to amend this Complaint to recover same under 11 U.S.C. § 550.

WHEREFORE, the Trustees pray that the Court enter judgment accordingly:

(a) declaring that the transfers described herein to be voidable transfer pursuant to 11 U.S.C. § 544, 548 and O.C.G.A. § 18-2-70, et.seq. recoverable pursuant to 11 U.S.C. § 550 of the Bankruptcy Code;

(b) award judgment against Defendant in the amount of $139,162.51 plus such additional sums as may be discovered during the litigation of this case;

(c) awarding Trustee costs and reasonable attorneys' fees incurred in connection with this action; and,

(d) granting Trustee such other and further relief as may be just and proper.

On this date: January 24, 2022.

MACEY, WILENSKY & HENNINGS, LLP

/s/ Todd E. Hennings
Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
thennings@maceywilensky.com
Attorneys for Robert Trauner
Chapter 7 Trustees